# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2633

_____

United States of America,    *
              *
    Appellee,    *
              * Appeal from the United States
  v.         * District Court for the
              * Northern District of Iowa.
Patricia G. Larson,     *
              * [UNPUBLISHED]
    Appellant,    *
              *
City of Peosta, Iowa; State of Iowa, *
              *
    Defendants.   *

_____

Submitted:  February 14, 2003

Filed: August 25, 2003
_____

Before HANSEN,[1] Chief Judge, RICHARD S. ARNOLD, and BYE, Circuit Judges.
_____

PER CURIAM.

Patricia G. Larson appeals from the judgment of foreclosure against her property arguing the Rural Housing Service (RHS) failed to comply with the

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 13, 2003.  He has been succeeded by the Honorable James B. Loken.

moratorium regulations in violation of federal law and was denied her right of redemption under state law. We affirm the decision of the district court.[2]

In June 1996, Larson obtained a Rural Housing Loan made pursuant to the provisions of Title V of the Housing Act of 1949. She promised to repay $78,530.00 plus interest based on a payment schedule with the Farmers Home Administration, now RHS. 42 U.S.C. § 1475(a) gives RHS the authority to grant payment moratoriums. Pursuant to this authority Larson sought and received a payment moratorium in 1998, which was cancelled on May 25, 1999.

Larson failed to make her loan payments to the government and on August 26, 1999, again requested moratorium relief. After an eight-month delay, which RHS attributes to Larson's incomplete application file, her request was denied. Larson appealed this decision but lost, whereupon she appealed to the director of RHS, who also upheld the agency's denial of moratorium relief.

After the moratorium was denied, the government filed a complaint in the Northern District of Iowa on March 21, 2001, alleging default and accelerating the payment schedule. Larson answered the complaint denying default. On May 10, 2001, the government moved for summary judgment. Larson resisted the motion and filed a demand for delay of sale on August 29, 2001, which was resisted.

On April 9, 2002, the district court denied Larson's motion and issued a judgment and decree of foreclosure. On June 11, 2002, the property was sold to a third party at a United States Marshal's sale. Larson did not seek a stay thereof. On June 18, 2002, RHS moved to confirm the sale. Over Larson's resistance, the district court confirmed the sale.

---

[2]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

I

Larson appeals, arguing the government wrongfully denied her moratorium relief, and once foreclosure procedures were begun, RHS failed to follow federal law which requires compliance with state law procedures governing foreclosure actions.

The government argues, in light of the fact the property has already been sold, Larson's appeal is moot. "Once foreclosed property is sold to a bona fide third-party purchaser, a court generally lacks the power to craft an adequate remedy for the debtor. Therefore, a debtor who fails to obtain a stay of the sale has no remedy on appeal and the appeal is moot." United States v. Fitzgerald, 109 F.3d 1339, 1342 (8th Cir. 1997) (citations omitted).

Larson did not seek to stay the Marshal's sale. That sale occurred and a third party purchased the property. If the property is now in the hands of a third party who purchased the land in good faith, a federal court should not undo that purchase. Id.

This is not the case here, however, for the third party who purchased the foreclosed land was on notice Larson was challenging the legality of the sale. Larson's appeal was pending, and the government had filed a lis pendens with the Dubuque County Clerk before the sale occurred. Moreover, Larson remained on the land and was making payments to the third party. Therefore, the third party purchaser bought the land subject to Larson's right to fully litigate the legality of the denial of the moratorium. Thus, the appeal is not moot.

II

Larson argues the district court's order upholding the agency decision is erroneous because it failed its obligations under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A),(C),(D),(F).

Larson argues RHS wrongfully denied her moratorium relief. Specifically, she claims RHS did not comply with the federal regulations governing the moratorium process; RHS erroneously determined her income had not fallen by 20%; and RHS erroneously determined the situation was permanent.

First, we consider whether RHS complied with the moratorium regulations. The Secretary of Agriculture is authorized by Congress to grant "a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary, upon a showing by the borrower that due to circumstance beyond his control he is unable to continue making payments . . . without unduly impairing his standard of living" during the time the loan is outstanding. 42 U.S.C. § 1475(a). More specifically, the moratorium regulations found at 7 C.F.R. § 3550.207 provide once a moratorium is granted "[a]t least 30 days before the moratorium is scheduled to expire, RHS will require the borrower to provide financial information needed to determine whether the borrower is able to resume making scheduled payments." 7 C.F.R. § 3550.207(b)(2). Larson argues such a demand for information was not made before her moratorium was canceled May 25, 1999, and so RHS did not comply with the federal regulations governing the moratorium process.

The government challenges this position only by saying: (1) the issue was not raised below and should not now be considered on appeal, and (2) there is no evidence such failure prejudiced Larson's rights. The government is wrong as to the first point. A review of the record, specifically page 47 of the appendix, shows Larson did raise RHS's failure to follow the moratorium regulations. On the other hand, we agree with the government's second argument.

It seems of little consequence to this appeal that RHS failed to request information before canceling the moratorium on May 25, 1999, because a full review of all pertinent information was conducted during the consideration of the second

moratorium request. Larson petitioned RHS for a second moratorium on August 26, 1999. On February 28, 2002, when RHS deemed the file complete, it performed a full review pursuant to 7 C.F.R. § 3550.207, and denied the second moratorium. Larson appealed this decision but lost her appeal, whereupon she appealed to the director of RHS who also upheld the agency's denial of moratorium relief. Only after RHS refused to grant a second moratorium, did it seek foreclosure in federal court.

Next we consider whether RHS erroneously concluded Larson was ineligible for moratorium relief. The criteria defining the eligibility for a moratorium is found in 7 C.F.R. § 3550.207(a). Only two of these criteria are relevant here, (a)(1) and (a)(1)(i) which together allow for moratorium relief when: "[d]ue to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making scheduled payments because: The borrower's repayment income fell by at least 20 percent within the past 12 months." RHS determined Larson did not qualify for a moratorium because she had not experienced a twenty percent reduction in her income in the "past twelve months" and her inability to pay was not temporary.

Larson first claims RHS's determination that her income did not fall by 20% was erroneous. Larson asked for a moratorium extension on August 26, 1999, which was denied. She appealed the decision and an administrative hearing was held on June 8, 2000, where the hearing officer determined Larson's income for 1999 totaled $2,427.68. This sum came from two sources: 31.87% of it, or $773.88, from working at Hometiques, a retail store, and 68.11%, or $1,653.60, from working at Northeast Iowa Community College. She lost her job at Hometiques and thereby lost 31.87% of her income. Accordingly, Larson argued her income dropped by more than 20% of her income in the "past twelve months." In so arguing she calculated the time period from August, 26, 1999.

The hearing officer, however, declined to use August 26 as the starting point for calculating the "past twelve months." Instead, the hearing officer used February

28, 2000, when RHS maintains it received all the supporting documentation. By that date, Larson was receiving Social Security Administration (SSA) benefits of at least $484 per month, and the hearing officer, therefore, concluded Larson's income actually increased during the relevant time period. Larson asserts RHS's choice of dates was arbitrary and unwarranted by the facts and therefore reversible error. The district court disagreed, and we do likewise. RHS's choice of date was reasonable, and the district court's approval of this agency decision is not reversible error.

Larson also argues RHS's determination her situation was permanent was erroneous. The hearing officer, like RHS, determined she was more than temporarily unable to resume her monthly payments. The hearing officer found Larson had a disability dating back to May 1997 for which she started receiving SSA benefits January 1, 2000. The success of her claim for SSA benefits was based primarily upon a letter dated October 5, 1999, wherein Larson's mental health counselor advised the SSA she was not capable of working at a competitive level for a minimum of the next twelve months. The letter further stated "[b]ased on the nature of her problems, she will not be employed at a competitive level at any time in the foreseeable future."

This same therapist, however, wrote a letter dated March 15, 2000, which suggested Larson would be employable again in June 2000. At the June 8 hearing, the therapist was questioned about his various letters and comments about the health of Larson. The therapist affirmed Larson would continue to receive SSA benefits for the foreseeable future. He further commented Larson was under a great deal of stress and had regressed since he wrote the March 15, 2000, letter.

Relying on these facts, the hearing officer concluded Larson was more than temporally unable to make her payments. She unsuccessfully appealed the hearing officer's decisions. While RHS's director's ultimate decision noted there was conflicting evidence about Larson's ability to work, the director, nonetheless,

concluded Larson was not entitled to a moratorium. The district court's approval of that agency decision is deemed not to be error.

## III

Larson argues, in the alternative, even if the moratorium relief was properly denied, the government failed to provide the appropriate state procedural protections to her during the foreclosure process. Specifically, she argues the government was obligated by 42 U.S.C. § 1475(b) to foreclose pursuant to Iowa law, and under Iowa law she had a right to either demand a delay of sale or the right to redemption. She further argues Iowa law makes the ability to foreclose without redemption contingent upon certain procedures in the Iowa Code. She reasons because the government failed to follow the appropriate state procedures for foreclosure without redemption, and the district court dismissed her demand for delay of sale, she is now entitled to the right of redemption. We disagree.

First, the real estate mortgage foreclosed in this case contained a specific contractual waiver of state redemption rights. In pertinent part, paragraph nineteen of the mortgage reads:

> Borrower agrees that the Government will not be bound by any present or future State Laws . . . (d) allowing any right of redemption or possession following any foreclosure sale . . . . Borrower expressly waives the benefit of such State law.

In <u>United States v. Birchem</u>, we upheld the use of such a waiver, stating:

> Even though [South Dakota] law prohibits the use of redemption waiver clauses, Congress has authorized the Secretary of Agriculture to establish the terms of the FmHA's loan instruments. Along these lines, we have recognized that Congress's authorization permits a federal

agency to include a waiver of state redemption rights in a borrower's mortgage. The Birchems are bound by the provision in their real estate mortgage that waives the benefits from any state laws "allowing any right of redemption or possession following any foreclosure sale."

100 F.3d 607, 609 (8th Cir. 1996) (citations omitted).

Additionally, rather than retracting from our position in Birchem, as Larson seems to imply, we recently reiterated it. In United States v. Jacobsen, the government brought a foreclosure action against Kathleen Jacobsen after she defaulted on a loan issued by the Farmers Home Administration. 319 F.3d 323, 323 (8th Cir. 2002) (per curiam). The district court ordered Ms. Jacobsen's mortgage be foreclosed. Id. The only issue on appeal was whether the government could contractually require Ms. Jacobsen to waive redemption and deficiency rights in spite of 42 U.S.C. § 1475(b). We held it could. Id. at 324.

Besides, § 1475(b) does not require the government to adopt state substantive rules. Rather it provides in relevant part: "in foreclosing on any mortgage held by the Secretary under this subchapter, the Secretary shall follow the foreclosure *procedures* of the State in which the property involved is located, to the extent such procedures are more favorable to the borrower. . . . " (Emphasis added).

The right to redemption is a substantive right, not a procedural right. Jacobsen, 319 F.3d at 324 ("We agree with the district court that the right to redemption and protection from deficiency judgments are substantive rights."). Therefore, even if we were to assume 42 U.S.C. § 1475(b) prohibited waivers of procedural rights as Larson argues, the statute is still inapplicable here, for the right to redemption is a substantive state right.

Reading Birchem and Jacobsen together, therefore, makes plain RHS can require borrowers to contractually waive their redemption rights afforded by Iowa

law, as RHS did here.  Since Larson waived her redemption rights in her mortgage agreement, we are unable to grant her such a right on appeal.  Accordingly, the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.